MICHAEL LEHNERS, ESQ.
429 Marsh Ave.
Reno, Nevada 89509
Nevada Bar Number 003331
(775) 786-1695
email michaellehners@yahoo.com
Attorney for Chapter 7 Trustee
W. Donald Gieseke

*Eg 8/14/24*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

oOo

IN RE

HOME FOR NOW, LLC,

Debtor(s).
_____/

BK-N- 24-50236-HLB
CHAPTER 7
Hearing Date:_____
and Time:_____
Mtn No. _____
Est Time: 5 Minutes
TRUSTEE'S AMENDED MOTION TO SELL
ASSETS FREE AND CLEAR OF LIENS

Chapter 7 Trustee, W. Donald Gieseke, and his attorney file the following Amended
Motion to Sell Estate Assets Free and Clear of Liens.

**1.      Background**

This case was filed on March 12, 2024. The Debtor is engaged in the business of
proving furnishings for vacant apartments. In Schedule "B", it lists furniture/furnishings with a
value of $480,000.

The furniture and household goods consists of approximately 15,000 items. They are
currently stored in locked conex boxes and the warehouse utilized by the Debtor. And there are
also items in the possession of third parties. In addition, at the time of bankruptcy, there was
money in the Debtor's checking accounts as well as unpaid receivables.

Counsel has conducted a UCC 1 financing search at the Nevada Secretary of State's
Office. A copy of the March 19, 2024 search results and the filed UCC 1 financing statements
are attached as Exhibit "1".

The name of each secured creditor, the date of that creditor's UCC 1 filing and its
collateral are summarized below:

1

A.    US Small Business Administration. 7/02/20

      •    All tangible and intangible personal property

B.    Corporation Service Company, as Representative. 5/09/23

      •    Future Receipts (Payment Intangibles)

C.    Innovation Refunds. 12/26/23

      •    ERC Claims (Employee Retention Tax Credits made available to employers under the coronavirus and other relief acts)

D.    Corporation Service Company, as Representative. 2/20/24

      •    Future Receipts (Payment Intangibles)

E.    Channel Partners Capital. 3/04/24

      •    All assets of the Debtor now or hereafter acquired

In addition, Counsel has examined the Debtor's Schedule "D" - Secured Creditors. There are eight of them. They are listed below with the collateral and amounts owed.

A.    360 Equipment Financing. 2015 Ford; $36,000.

B.    360 Equipment Financing. 2013 Nissan; Amount of Claim - Unknown.

C.    Byzfunder. Future Receivables. $65,000.

D.    Channel Partners. Future Receivables. $50,000.

E.    Ford Motor Credit. 2023 Ford Box Truck. $60,000.

F.    Forward Financing. Future Receivables. $50,000.

G.    Shipped.com. Conex Shipping Containers. $12,000.

H.    U.S. Small Business Association. All tangible and intangible personal property. $135,000.

**2.    The Sale**

    A.    <u>PRELIMINARY STATEMENT</u>

This sale shall be conducted pursuant to (1) 11 U.S.C. §363(b)(1) which permits a Trustee, after notice and a hearing, to use, sell, or lease, other than in the ordinary course of business, property of the estate; (2) 11 U.S.C. §363(f)(1) which permits a Trustee to sell

2

property under §363(b) free and clear of any interest in such property of an entity other than the estate, if applicable nonbankruptcy law permits sale of such property free and clear of such interest; (3) Article Nine of the Uniform Commercial Code's procedures regarding the disposition of collateral. See NRS 104.9609 et. seq.

As described in more detail in Section 5, infra, a secured creditor may "dispose of collateral" under Section Six of Article Nine of the Uniform Commercial Code without repossession if it allows another party to conduct the disposition. See NRS 104.9610(1) and *Hope v. Performance Auto., Inc.*, 710 So. 2d 1235, 1242 (Ala. 1998), allowing a debtor to negotiate the sale of collateral to a third party[1].

The SBA gave initial approval to dispose of the Debtor's collateral. The SBA has not yet given the Chapter 7 Trustee final approval to dispose of the Debtor's collateral. The SBA is in the process of seeking final approval for this sale to proceed. In the event the SBA is unable to get final approval through the SBA administration by the time of the hearing on this motion, the Trustee shall withdraw the motion. The Trustee is filing the motion now with this reservation in order to prevent the sale to from falling through due to the passage of time[2].

B.    PUBLIC VS. PRIVATE SALE

NRS 104.9610(3) discusses disposition of collateral, which includes disposition by a public or private sale. According to Drafter's Comment No. 7 of UCC 9-§610, "*a 'public disposition' is one at which the price is determined after the public has had a meaningful opportunity for competitive bidding*". As discussed below, the sale of the SBA's collateral is to Stay, LLC. However, the sale to Stay, LLC is subject to overbids at the time of the hearing in Bankruptcy Court, making it a public sale.

Drafter's Comment No. 7 elaborates on what a meaningful opportunity for competitive bidding is. It states ""*Meaningful opportunity' is meant to imply that some form of*

---

[1] In bankruptcy, the Trustee is the representative of the Debtor's estate, and he or she has the capacity to sue and be sued. 11 U.S.C. §323.

[2] The Trustee and his counsel have elected not to seek to have this motion heard on shortened time because NRS 104.9613 requires a reasonable notice of the time and place of a public sale.

*advertisement or public notice must precede the sale (or other disposition) and that the public must have access to the sale (disposition)*".

The Chapter 7 Trustee, in his business judgment, has elected to dispose of the collateral by a public sale instead of a private sale. There are two reasons for this. **First**, he is required to serve the Motion and Notice of Motion under §363(b), and (2). **Second**, the Trustee has not been able to identify any entities to target with advertisements for the 25 conex containers and all of the consumer goods as a single sale.

NRS 104.9613(1)(e) provides a notice template for non-consumer-goods transactions, which the Trustee has adapted to this public sale. A consumer-goods transaction can only take place where a natural person incurs an obligation primarily for personal, family or household purposes. NRS 104.9102(1)(y). Since the Debtor is not a natural person, the Trustee must use the template contained in NRS 104.9613. A copy of the Trustee's proposed notice of public sale has been attached as Exhibit "2". It shall be sent to all parties listed in the Notice's Exhibit "A" along with a copy of this Amended Motion and Notice of Hearing.

C.    THE TERMS OF SALE TO STAY, LLC

The Trustee wishes to sell the following property to Stay, LLC:

1.    All of the furniture and household goods owned by the Debtor at the time of filing. The furniture/household goods are (a) In the locked conex boxes; (b) Stored in the warehouse that had been utilized by the Debtor, and, (c) In the possession of third parties that had done business with the Debtor prior to the filing of bankruptcy;

2.    The 25 conex boxes owned by the Debtor, including those which contain the furniture/household goods;

3.    All of the all unpaid accounts receivable that are owing as of the date the Bankruptcy Court enters its Order approving the sale.

4.

Stay, LLC has agreed to pay the Chapter 7 Trustee the sum of $102,000 for the items described above.

4

Stay, LLC shall pay the $102,000 over time. In particular, LLC has made a down payment of $30,000, and it will make payments of $6,000 per month for 12 months following entry of an order approving the sale. Stay, LLC may not encumber assets until the full balance of $102,000 has been paid to the Chapter 7 Trustee. Stay, LLC will provide quarterly reports to the Trustee of inventory and other significant assets.

In the event the Bankruptcy Court approves this sale to Stay, LLC (or to any other successful overbidder who will make payments over time to the Estate), the successful bidder shall create and deliver to the Chapter 7 Trustee an inventory within 90 days of approval of the sale.

In the event that there is a successful overbid, then the terms of payment shall be placed in the Bankruptcy Court's Order approving the sale.

It is an express condition of this sale that if approved by the Bankruptcy Court, Stay, LLC (or any successful overbidder) shall take the assets free and clear of any interest in such property of an entity other than the estate. As such, neither Stay LLC nor any successful overbidder is assuming any liabilities of the bankrupt company, including its debts, legal obligations, or other responsibilities. However, the obligation to pay the Chapter 7 Trustee pursuant to the terms herein survives and will be enforceable. A sale free and clear of any interest in such property of an entity other than the estate is authorized under 11 U.S.C. §363(f) where the Trustee can demonstrate compliance with one of the conditions set forth in §363(f)(1), (2), (3), (4) or (5).

In Section 3, infra, the Trustee explains why this proposed sale is in compliance with 11 U.S.C. §363(f)(1).

In the event Stay, LLC. (or any successful overbidder who will make payments over time to the Estate) fails to make any of the $6,000 payments by the scheduled due date(s), it shall not be in default until the Chapter 7 Trustee sends Stay, LLC, a notice describing the default by Stay, LLC, and Stay, LLC fails to cure the default within 10 days of the date the Chapter 7 Trustee dispatches notice. This notice shall be sent by regular mail to Stay, LLC at

5

5150 Mae Ann Ave., Suite 405, PMB 1112, Reno, NV 89523, (or the address supplied by any successful overbidder who will make payments over time to the Estate).

In the event of a default and failure to cure by Stay, LLC, (or any successful overbidder who will make payments over time to the Estate) the Chapter 7 Trustee shall file an affidavit with this Court along with an Order. This Order shall direct Stay, LLC (or any successful overbidder who will make payments over time to the Estate) to assign all assets to the Estate for liquidation until the full amount owed is satisfied, plus necessary administrative expenses.

**3. The Secured Creditors**

A. THE PRIORITY OF SECURED CLAIMS

Perfection takes place when a security interest has attached and the requirements for perfection have been met. NRS 104.9308(1).

In this case, counsel's UCC 1 search revealed five perfected security interests. Each creditor is described in Section 1, supra.

When there is more than one perfected security interest, the security interests rank according to priority in time of filing or perfection. NRS 104.9322(1)(a); Drafter's Comment No. 4 to UCC 9-§322.

The Debtor's tangible personal property that is the subject of this sale is "Inventory". Please see NRS 104.9102(1)(ww) - Inventory means goods, other than farm products, which: . . . (2) are held by a person for sale or lease or to be furnished under a contract of service.

In order to perfect a personal property security interest in Inventory, the secured creditor must file a UCC 1 Financing Statement. See NRS 104.9310(1).

The SBA filed its UCC 1 financing statement with the Nevada Secretary of State's Office on July 2, 2020. Corporation Service Company, as Representative; Innovation Refunds; Corporation Service Company, as Representative; and Channel Partners Capital all filed their UCC 1 financing statements after July 2, 2020. For this reason, the SBA is the senior perfected security interest.

B.    SHIPPED.COM

Shipped.com is owed approximately $12,000 on the conex containers that are being sold. Shipped.com has not filed a UCC 1 financing statement, nor has it produced an authenticated security agreement.

Instead, Shipped.com issued an invoice to the Debtor for these containers. A copy of this invoice has been attached as Exhibit "3". At the back of the invoice, Shipped.com, as the Seller, continues to own the goods until paid in full. At that time, title will transfer to the Debtor. Shipped.com also reserved a purchase money security interest in the Equipment sold herein, as well as the right to file any documentation to perfect such interest in any jurisdiction.

Shipped.com takes the position that title to the conex boxes never passed to the Debtor or Trustee because its invoice was never paid. Therefore, it is entitled to be paid out of the proceeds of sale.

The Trustee disagrees.

The definition of a security interest is found at NRS 104.1201(2)(jj). It says in relevant part: *"The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer under NRS 104.2401 is limited in effect to a reservation of a 'security interest.'"*

Article Two governs the sale of goods, which is what the conex containers are. NRS 104.2401 discusses passing of title. Subsection (1) provides: *"Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."*

Article Nine references portions of Article Two. Please see NRS 104.9110 which states:

A security interest arising under NRS 104.2401 (*passing of title*), 104.2505 (*Shipment under reservation*), subsection 3 of 104.2711 (*Revocation or rejection of acceptance*), or subsection 5 of NRS 104A.2508 (*Rightful rejection or justifiable revocation of acceptance of a lease*) is subject to this Article. However, until the debtor obtains possession of the goods:

1. The security interest is enforceable, even if paragraph (c) of subsection 2 of NRS 104.9203 has not been satisfied;

2. Filing is not required to perfect the security interest;

7

3. The rights of the secured party after default by the debtor are governed by Article 2 or 2A; and

4. The security interest has priority over a conflicting security interest created by the debtor.

The point of NRS 104.9110 is that Shipped.com had a security interest before Home for Now received the conex containers. Once the containers were delivered, all Shipped.com had was the right to create a security interest.

Reservation of title language does two things. **First**, it allows the creditor to reserve the creation of a security interest. **Second**, it creates an actual security interest in goods until the Debtor obtains possession of them.

Reservation of title issues arise where an earlier security agreement contains an after acquired property clause, and the Debtor finances subsequent collateral through a purchase money security interest. This is the case here.

A copy of the SBA's security agreement has been attached as Exhibit "4". Paragraph 4 at page 1 provides:

4.    Collateral Description

The Collateral in which this security interest is granted includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to: . . . .

After acquired property clauses are authorized by NRS 104.9204(1).

The household goods being sold are inventory. The conex boxes were not intended for resale, making them equipment. For that reason, the priority of a purchase money security interest over an earlier after acquired property clause depends upon the type of collateral at issue.

The priority of a perfected purchase-money security interest in inventory is governed by NRS 104.9324(1):

(1)    Subject to subsection 2 and except as otherwise provided in subsection 7, a perfected purchase-money security interest in inventory has priority over a conflicting security interest in the same inventory, has priority over a conflicting security interest in chattel paper or an instrument constituting proceeds of the inventory and in proceeds of the chattel paper, if so

8

provided in NRS 104.9330, and, except as otherwise provided in NRS 104.9327, also has priority in identifiable cash proceeds of the inventory to the extent the identifiable cash proceeds are received on or before the delivery of the inventory to a buyer, if:

    (a)    The purchase-money security interest is perfected when the debtor receives possession of the inventory;

    (b)    The purchase-money secured party sends a signed notification to the holder of the conflicting security interest;

    (c)    The holder of the conflicting security interest receives the notification within 5 years before the debtor receives possession of the inventory; and

    (d)    The notification states that the person sending the notification has or expects to acquire a purchase-money security interest in inventory of the debtor and describes the inventory.

While this is a lengthy and complex statute, the general rule is that the purchase-money interest takes priority if it is perfected when the debtor receives possession of the collateral or within 20 days thereafter. Please see Drafter's Comment No. 3[1].

The priority of a purchase money security interest in goods other than inventory or livestock is governed by NRS 104.9324(5):

Except as otherwise provided in subsection 7, a perfected purchase-money security interest in goods other than inventory or livestock has priority over a conflicting security interest in the same goods, and, except as otherwise provided in NRS 104.9327, a perfected security interest in its identifiable proceeds also has priority, if the purchase-money security interest is perfected when the debtor receives possession of the collateral or within 20 days thereafter.

In this case, Shipped.com did not acquire a security interest in the conex boxes before or within 20 days after the Debtor took possession. For these reasons, the after acquired property clause of the SBA's security agreement takes priority over Shipped.com's reservation of title language in its invoice.

C.    OPERATION OF 11 U.S.C. §363(f)(1)

Section 363(f) says that "The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only

---

[1] The 20 day rule is found in NRS 104.9324(2)(b). NRS 104.9324(1) does say the rule is subject to subsection (2).

if-- (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;"

Accordingly, in the event applicable nonbankruptcy law allows a sale free and clear of the junior secured creditor's security interests, the Trustee may sell the assets described herein.

This concept has been recognized by the Ninth Circuit in *Matter of Spanish Peaks Holdings II, LLC*, 872 F.3d 892, (9th Cir.), 2017). In that case Spanish Peaks Holdings, LLC ("SPH") filed for bankruptcy under Chapter 7. Its largest creditor was Spanish Peaks Acquisition Partners, LLC ("SPAP"), which had a valid claim of more than $122 million secured by the mortgage on certain real property.

The trustee and SPAP agreed to a plan for liquidating substantially all of the debtors' real and personal property. Their stipulation contemplated an auction with a minimum bid of $20 million. It further stated that the sale would be free and clear of all liens.

In 2006, SPH leased restaurant space to a company that eventually assigned its interest to The Pinnacle Restaurant at Big Sky, LLC ("Pinnacle").

In 2009, SPH leased a separate parcel of commercial real estate to Montana Opticom, LLC (Opticom).

The Pinnacle and Opticom leases were not mentioned in either the list of encumbrances that would survive the sale or the list of liens for which protection would be provided.

After a hearing, the bankruptcy court authorized the sale. It did not rule on Pinnacle's and Opticom's objection. It deferred ruling until an auction and approval hearing took place. The property was sold for $26.1 million. The bankruptcy court entered an order approving the sale, and it held that the sale was free and clear of any Interests.

An appeal was filed to the District Court. It held that the sale extinguished the leases because the foreclosure of a mortgage would, under Montana law, terminate any leasehold interests junior to the mortgage.

The matter was then appealed to the Ninth Circuit, which affirmed the District Court. Its rationale has direct application to this case:

10

Under Montana law, a foreclosure sale to satisfy a mortgage terminates a subsequent lease on the mortgaged property. SPH's bankruptcy proceeded, practically speaking, like a foreclosure sale—hardly surprising since its largest creditor was the holder of the note and mortgage on the property. Indeed, had SPH not declared bankruptcy, we can confidently say that there would have been an actual foreclosure sale. Such a sale would have terminated the Pinnacle and Opticom leases. <u>Section 363(f)(1) does not require an actual or anticipated foreclosure sale. It is satisfied if such a sale would be legally permissible.</u>

Id 872 F.3d at 900 (Citations Omitted and Emphasis Supplied)

Spanish Peaks Holdings stands for the proposition that if the Trustee's sale is in the nature of a foreclosure sale, then under §363(f)(1), all junior encumbrances are eliminated so long as that result would be reached under state law.

D.    <u>APPLICABLE NON-BANKRUPTCY LAW</u>

As noted above, the SBA has the senior priority security interest in the Debtor's personal property. It also has an after acquired property clause in the security agreement.

Assuming the SBA obtains final approval to allow the Trustee to dispose of these assets prior to the hearing on the motion, the sale will take place. The SBA has agreed upon a carve out for the estate. Specifically, the estate will be paid its administrative expenses[1], and the unsecured creditors will receive a 10% distribution of the net sale proceeds. The SBA shall receive the balance of the sale proceeds pursuant to NRS 104.9608(1)(a)'s distribution scheme which is described in more detail in Section 5, infra.

A secured party's disposition of collateral after default discharges the security interest under which the disposition is made; and any subordinate security interest or other subordinate lien. NRS 104.9617(1)(a)&(b).

As noted above, Article Nine does not require the secured creditor to repossess and dispose of its collateral. A debtor's disposition of collateral with the secured creditor's consent constitutes a valid disposition of collateral under Article Nine. See *Hope v. Performance*

---

[1] Any attorney fee must first be approved by this Court before it can be classified as an administrative expense.

1 1

*Automotive, Inc.*, 710 So.2d 1235, 1241–42 (Ala.,1998); *In re Long*, 83 B.R. 579, 581 (Bkrtcy.E.D.Ark.,1987).

If the SBA gives final approval for the Chapter 7 Trustee to dispose of the collateral, then the sale can go forward under 11 U.S.C. §363(f)(1) because all junior security interests and liens are discharged after distribution of the proceeds of sale.

**4 .    Article Nine of the Uniform Commercial Code**

After default, disposition of the collateral is subject to the following rules and requirements. Counsel has attempted to summarize the statutes cited below, rather than repeating them in their entirety.

That being said, after default, a secured creditor may exercise the following rights and remedies:

A.    Enforce the security interest in the collateral by any available judicial procedure. NRS 104.9601(1)(a).

B.    Take possession of the collateral. NRS 104.9609(1).

C.    Sell, lease, license or otherwise dispose of any or all of the collateral. NRS 104.9610(1).

D.    Every aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable. NRS 104.9610(2).

E.    Notice of the disposition of collateral must be noticed to (1) The debtor and (2) Any secondary obligor.

F.    If the collateral is other than consumer goods, notice of the disposition of collateral must be noticed to (1) Any other person from which the secured party has received, before the notification date, an authenticated notification of a claim of an interest in the collateral; (2) Any other secured party or lienholder that, 10 days before the notification date, held a security interest in or other lien on the collateral perfected by the filing of a financing statement that: (I) Identified the collateral; (II) Was indexed under the debtor's name as of that date; and (III) Was filed in the

office in which to file a financing statement against the debtor covering the collateral as of that date; and (3) Any other secured party that, 10 days before the notification date, held a security interest in the collateral perfected by compliance with a statute, regulation or treaty described in subsection 1 of NRS 104.9311[1].

G.   In a non-consumer transaction, a notification of disposition sent after default and 10 days or more before the earliest time of disposition set forth in the notification is sent within a reasonable time before the disposition. NRS 104.9612(2).

H.   The cash proceeds of the disposition of collateral shall apply in the following order: (1) The reasonable expenses of retaking, holding, preparing for disposition, processing and disposing of the collateral; (2) The satisfaction of obligations secured by the security interest or agricultural lien under which the disposition is made; and (3) The satisfaction of obligations secured by any subordinate security interest in the collateral. NRS 104.9615.

H.   A secured party's disposition of collateral after default: (1) Transfers to a transferee for value all of the debtor's rights in the collateral; (2) Discharges the security interest under which the disposition is made; and (3) Discharges any subordinate security interest or other subordinate lien. NRS 104.9617(1), (a), (b) and (c).

I.   A collection, enforcement, disposition or acceptance is commercially reasonable if it has been approved in a judicial proceeding. NRS 104.9627(3)(a).

**5.   Trustee's and this Motion's Compliance With Article Nine**

It is not disputed the Debtor is in default on its obligation with the SBA.

A creditor who, without repossession, allows a defaulting debtor to work with it to sell the collateral is deemed to have disposed of the collateral itself. This conclusion is consistent with the language in NRS 104.9610(1) which says that a secured party may sell or otherwise dispose of collateral "after default", without specifying that the creditor must first take possession of the property. UCC 9-§610 was former section UCC 9-504(1), and (3).

---

[1] Statutes, treaties, security interests of public utilities, DMV statutes, certificate of title statues of other jurisdictions.

13

*Hope v. Performance Auto., Inc.*, 710 So. 2d 1235, 1242 (Ala. 1998) was decided when UCC 9-§504 was in effect. That Court held that a transfer involving disposition of collateral did not have to be made by the holder of superior security interest where all proceeds were applied by the seller in satisfaction of secured obligation and that a sale was disposition of collateral by the bank even though the bank did not physically repossess collateral or participate directly in sale. The Court cited UCC 9-§504(1) and (3) in reaching this conclusion. Id 710 So. 2d at 1242.

With final approval, the Trustee will acquire the right to enforce the security interest in the collateral by judicial procedure. NRS 104.9601(1)(a); 11 U.S.C. §363(b)&(f)(1).

The Trustee holds the collateral as property of the estate.

The Trustee may sell, lease or license the collateral, and he wishes to do so by selling it to Stay, LLC, for $102,000, subject to overbids at a public sale under the terms set forth in Subsection 2, supra.

The Trustee's disposition of the collateral must be commercially reasonable. NRS 104.9610(2). The sale described in Subsection 2 is commercially reasonable for the following reasons.

**First**, The Debtor's and purchase of the goods was not a "consumer goods transaction". NRS 104.9102(1)(y) says a "consumer goods transaction means a consumer transaction to the extent that:

(1)    A natural person incurs an obligation primarily for personal, family or household purposes; and

(2)    A security interest in consumer goods or in consumer goods and software that is held or acquired primarily for personal, family or household purposes secures the obligation.

In this case the Debtor, Home for Now is a domestic limited liability company. It is not a natural person. This created a non-consumer goods transaction.

This is an important distinction. The notice required to be given of a disposition of collateral differ, depending upon whether or not the underlying transaction was a consumer goods transaction or a non-consumer goods transaction.

NRS 104.9613 describes the following rules of notice in a non-consumer goods transaction. It states:

1.  Except in a consumer-goods transaction, the following rules apply:

    (a)  The contents of a notification of disposition are sufficient if the notification:

(1)  Describes the debtor and the secured party;

(2)  Describes the collateral that is the subject of the intended disposition;

(3)  States the method of intended disposition;

(4)  States that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and

(5)  States the time and place of a public disposition or the time after which any other disposition is to be made.

Please see Exhibit "2", infra.

**Second**, The sale is subject to overbids. Notice of the sale has been sent to the holders of all junior security interests and all creditors on the mailing matrix.

**Third**, The Trustee has obtained an opinion from what an auctioneer could sell these assets for.

**Fourth**, To insure compliance with NRS 104.9611(3)(c)(2); Counsel shall conduct a second UCC search within 10 days of the date the Notice of Disposition of Collateral is mailed in order to ascertain if there are other entities who held a security interest in the collateral being sold.

After the sale, the Trustee shall distribute the proceeds pursuant to NRS 104.9608(1)(a) which designates disposition in the following order:

(1)  The reasonable expenses of collection and enforcement and, to the extent provided for by agreement and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the secured party;

(2)  The satisfaction of obligations secured by the security interest or agricultural lien under which the collection or enforcement is made; and

1 5

(3)     The satisfaction of obligations secured by any subordinate security interest in or other lien on the collateral subject to the security interest or agricultural lien under which the collection or enforcement is made if the secured party receives a signed demand for proceeds before distribution of the proceeds is completed.

The amounts paid under NRS 104.9608(1)(a)(1) shall include all allowed administrative claims and a 10% carve out for the unsecured creditors of the Bankruptcy Estate.

The amounts paid under NRS 104.9608(1)(a)(2) shall include the application of all remaining proceeds to the amount owed to the SBA.

In the event there are surplus funds after payment in full under NRS 104.9608(1)(a)(1) and (2); then the surplus will be paid in accordance with NRS 104.9608(1)(a)(3) as described above.

The Trustee will request that this Court make a finding that the completion of the sale/disposition in this manner is commercially reasonable. This is allowed under NRS 104.9627(3). The Trustee is also requesting the Order state that this sale will discharge both the SBA's security interest and all other liens and encumbrances so that the sale is free and clear of liens.

**6.     Conclusion**

The sale price is reasonable as the Trustee has obtained an opinion from what an auctioneer could sell these assets for. The Trustee is selling these items outright for a reasonable value, and he will not incur an auctioneer's commission.

Trustee's counsel believes the motion and subsequent notice of sale after a hearing is set will satisfy the requirements of a reasonable disposition under Article Nine and extinguish all junior liens, making the sale proper under both §363(b) and §363(f)(1).

Finally, the Trustee and counsel request that the 14 day time period in Fed. R. Bank.

/  /

/  /

/  /

16

Pro. 6004(h) be waived and that this Order be effective upon its entry on the docket.

Dated: This ___14___ day of ___August___, 2024

By: _____
Michael Lehners, Esq.
429 Marsh Ave.
Reno, Nevada 89509
Nevada Bar Number 003331

17

## Exhibit  List

| | |
|---|---|
| Exhibit  1 | March  19,  2024 UCC  1  search  results  and  the  filed  UCC  1  financing  statements |
| Exhibit  2 | Trustee's  proposed  notice  of  public  sale |
| Exhibit  3 | Shipped.com's  Invoice  for  conex  units |
| Exhibit  4 | SBA's  security  agreement |

Exhibit 1

Exhibit 1

STATE OF NEVADA

*FRANCISCO V. AGUILAR*
*Secretary of State*



*Commercial Recordings & Notary Division*
*401 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

*DEPUTY BAKKEDAHL*
*Deputy Secretary for*
*Commercial Recordings*

**OFFICE OF THE**
**SECRETARY OF STATE**

Michael Lehners
429 Marsh Avenue
Reno, NV 89509, USA

**Work Order #:** W2024031901412
March 19, 2024
Receipt Version: 1

**Special Handling Instructions:**

**Submitter ID:** 11578

Charges

| Description | Fee Description | Filing Number | Filing Date/Time | Filing Status | Qty | Price | Amount |
|---|---|---|---|---|---|---|---|
| UCC-11 Search and Copy Request | Fees | 2024393485-9 | 3/19/2024 12:26:41 PM | Approved | 1 | $40.00 | $40.00 |
| Total | | | | | | | $40.00 |

Payments

| Type | Description | Payment Status | Amount |
|---|---|---|---|
| Credit Card | 7108764066516724003063 | Success | $40.00 |
| Credit Card | Service Fee | Success | $1.00 |
| Total | | | $41.00 |

**Credit Balance:**     $0.00

Michael Lehners
429 Marsh Avenue
Reno, NV 89509, USA

*FRANCISCO V. AGUILAR*
*Secretary of State*

**STATE OF NEVADA**



*Commercial Recordings Division*
*401 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

*DEPUTY BAKKEDAHL*
*Deputy Secretary for*
*Commercial Recordings*

**OFFICE OF THE**
**SECRETARY OF STATE**

## UCC Search Report

> The Nevada Secretary of State hereby certifies that the attached list is a true and exact list of all financing statements or federal tax liens and related subsequent documentation for the debtor below as filed with the Secretary of State's office, Uniform Commercial Code Division, as of the Through Date below.

Date Searched: 3/19/2024 12:26:41 PM    Search Criteria:
Searched by: Sean Campbell
Filing Chains: 5
Good Through Filing Date: 03/07/2024
Date Range: All Available Filings
Include Filings Outside Range?: All Available Filings

Filing Status: ALL(Lapsed and Unlapsed)
Include Records: N/A

Organization: HOME FOR NOW, LLC

Cities:

---

**Filing Chain#: 1**
**Original File#: 2020112183-1**

**Lapse Date: 07/02/2025**
**Lien Type: UCC Lien**

---

**Filing #: 2020112183-1**    **Filing Date: 07/02/2020**    **Filing Type:** Initial    **Page Count:** 1
                              10:00 AM                        Financing Statement UCC-1

**Debtors**
**Name**                      **Type**                       **Address**
HOME FOR NOW, LLC             Organization                   5601 ECHO AVE, SUITE A RENO, NV 89506, USA

**Secured Parties**
**Name**                      **Type**                       **Address**
U.S. SMALL BUSINESS           Organization                   10737 GATEWAY WEST, 300 EL PASO, TX 79935, USA
ADMINISTRATION

---

**Filing Chain#: 2**
**Original File#: 2023326651-6**

**Lapse Date: 05/09/2028**
**Lien Type: UCC Lien**

---

**Filing #: 2023326651-6**    **Filing Date: 05/09/2023**    **Filing Type:** Initial Financing **Page Count:** 1
                              10:00 AM                        Statement UCC-1

**Debtors**
**Name**                      **Type**                       **Address**
HOME FOR NOW, LLC             Organization                   5601 ECHO AVENUE STE A RENO, NV 89506, USA

---

*FRANCISCO V. AGUILAR*
*Secretary of State*

**STATE OF NEVADA**



*Commercial Recordings Division*
*401 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

**DEPUTY BAKKEDAHL**
*Deputy Secretary for*
*Commercial Recordings*

**OFFICE OF THE**
**SECRETARY OF STATE**

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

| **Secured Parties** | | |
|---|---|---|
| Name | Type | Address |
| CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | Organization | P.O. BOX 2576 UCCSPREP CSC INFO.COM SPRINGFIELD, IL 62708, USA |

---

**Filing Chain#:** 3
**Original File#:** 2023370468-2

**Lapse Date:** 12/26/2028
**Lien Type:** UCC Lien

---

**Filing #:** 2023370468-2

**Filing Date:** 12/26/2023 04:40 PM

**Filing Type:** Initial Financing Statement UCC-1 **Page Count:** 1

| **Debtors** | | |
|---|---|---|
| Name | Type | Address |
| HOME FOR NOW, LLC | Organization | 5601 ECHO AVE STE A RENO, NV 89506, USA |
| **Secured Parties** | | |
| Name | Type | Address |
| INNOVATION REFUNDS | Organization | 4350 WESTOWN PKWY 8 300 WEST DES MOINES, IA 50266, USA |

---

**Filing Chain#:** 4
**Original File#:** 2024388484-7

**Lapse Date:** 02/20/2029
**Lien Type:** UCC Lien

---

**Filing #:** 2024388484-7

**Filing Date:** 02/20/2024 10:00 AM

**Filing Type:** Initial Financing Statement UCC-1 **Page Count:** 1

| **Debtors** | | |
|---|---|---|
| Name | Type | Address |
| HOME FOR NOW LLC | Organization | 5601 ECHO AVENUE BUILDING A RENO, NV 89506, USA |
| **Secured Parties** | | |
| Name | Type | Address |
| CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | Organization | PO BOX 2576, UCCSPREP CSCGLOBAL.COM SPRINGFIELD, IL 62708, USA |

---

*FRANCISCO V. AGUILAR*
*Secretary of State*

**STATE OF NEVADA**



*Commercial Recordings Division*
*401 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

*DEPUTY BAKKEDAHL*
*Deputy Secretary for*
*Commercial Recordings*

**OFFICE OF THE**
**SECRETARY OF STATE**

---

**Filing Chain#:** 5
**Original File#:** 2024390985-8

**Lapse Date:** 03/04/2029
**Lien Type:** UCC Lien

---

**Filing #:** 2024390985-8     **Filing Date:** 03/04/2024     **Filing Type:** Initial Financing **Page Count:** 1
                                 10:00 AM                         Statement UCC-1

**Debtors**

| Name | Type | Address |
|------|------|---------|
| HOME FOR NOW, LLC | Organization | 5601 ECHO AVE STE A RENO, NV 89506, USA |

**Secured Parties**

| Name | Type | Address |
|------|------|---------|
| CHANNEL PARTNERS CAPITAL, LLC | Organization | 10900 WAYZATA BLVD, SUITE 300 MINNETONKA, MN 55305, USA |

---

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER** (optional)<br>CSC   1-800-858-5294 | **Filed in the Office of**<br>*Barbara K. Cegavske* |
| **B. E-MAIL CONTACT AT FILER** (optional)<br>SPRFiling@cscglobal.com | Secretary of State<br>State Of Nevada |
| **C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br>1889 95664<br>CSC<br>801 Adlai Stevenson Drive<br>Springfield, IL 62703<br>Filed In: Nevada<br>(S.O.S.) | |

**Filed in the Office of**

**Initial Filing Number**
**2020112183-1**
**Filed On**
**July 2, 2020 10:00 AM**
**Number of Pages**
**1**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME  Home For Now, LLC | | | | |
|---|---|---|---|---|
| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS  5601 ECHO AVE, Suite A | CITY  RENO | STATE  NV | POSTAL CODE  89506 | COUNTRY  USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  U.S. Small Business Administration | | | | |
|---|---|---|---|---|
| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS  10737 Gateway West, #300 | CITY  El Paso | STATE  TX | POSTAL CODE  79935 | COUNTRY  USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

272691 7909

| | | |
|---|---|---|
| **5. Check only if applicable and check only one box:** Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative | |
| **6a. Check only if applicable and check only one box:**<br>☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | **6b. Check only if applicable and check only one box:**<br>☐ Agricultural Lien   ☐ Non-UCC Filing | |
| **7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor | | |
| **8. OPTIONAL FILER REFERENCE DATA:** | | 1889 95664 |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>CSC    1-800-858-5294 | |
| **B. E-MAIL CONTACT AT FILER (optional)**<br>SPRFiling@cscglobal.com | |
| **C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br><br>┌ 2550 00536<br>CSC<br>801 Adlai Stevenson Drive<br>Springfield, IL 62703<br><br>Filed In: Nevada<br>(S.O.S.) | |

| Filed in the Office of | Initial Filing Number<br>**2023326651-6** |
|---|---|
| *F.H.Aguilar* | Filed On<br>May 9, 2023 10:00 AM |
| Secretary of State<br>State Of Nevada | Number of Pages<br>1 |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | |
|---|---|---|---|
| **1a. ORGANIZATION'S NAME** HOME FOR NOW, LLC | | | |

| **1b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **1c. MAILING ADDRESS** 5601 Echo Avenue Ste A | **CITY** Reno | **STATE** NV | **POSTAL CODE** 89506 | **COUNTRY** USA |
|---|---|---|---|---|

---

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | |
|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | |

| **2b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|

---

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| | | | |
|---|---|---|---|
| **3a. ORGANIZATION'S NAME** CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | | | |

| **3b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **3c. MAILING ADDRESS** P.O. Box 2576<br>UCCSPREP@CSCINFO.COM | **CITY** Springfield | **STATE** IL | **POSTAL CODE** 62708 | **COUNTRY** USA |
|---|---|---|---|---|

---

**4. COLLATERAL:** This financing statement covers the following collateral:

Secured Party has purchased certain "Future Receipts" from Debtor. "Future Receipts" includes all payments made by cash, check, Automated Clearing House or other electronic transfer or other form of monetary payment in the ordinary course of Seller's business.

Notice: Pursuant to the agreement between Debtor and Secured Party, Debtor is prohibited from obtaining any financing that impairs the value of the Future Receipts or Secured Party's right to collect same.

In the event that any entity is granted a security interest in the Future Receipts contrary to the above, the Secured Party asserts a claim to any proceeds thereof received by such entity.

---

**5.** Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7.** ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8.** OPTIONAL FILER REFERENCE DATA:

2550 00536

---

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Will Saborio 909-851-6283

B. E-MAIL CONTACT AT FILER (optional)
eng@middesk.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Middesk, Inc.
85 2nd Street, Suite 710
San Francisco, CA 94105, USA

| Filed in the Office of | Initial Filing Number |
|---|---|
| *F.M.Aguilar* | 2023370468-2 |
| | Filed On |
| | December 26, 2023 04:40 PM |
| Secretary of State | Number of Pages |
| State Of Nevada | 1 |

1. DEBTOR'S NAME:  Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐  and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| HOME FOR NOW, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5601 ECHO AVE STE A | RENO | NV | 89506 | USA |

2. DEBTOR'S NAME:  Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐  and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| INNOVATION REFUNDS | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4350 WESTOWN PKWY 8 300 | WEST DES MOINES | IA | 50266 | USA |

4.  COLLATERAL: This financing statement covers the following collateral:

ALL RIGHT, TITLE, INTEREST, CLAIMS AND DEMANDS OF DEBTOR IN AND TO THE FOLLOWING PROPERTY:
(A) ALL ERC CLAIMS (AS DEFINED BELOW); AND
(B) ALL PROCEEDS AND COLLECTIONS WITH RESPECT TO ALL ERC CLAIMS (AS DEFINED BELOW) AND ALL RECORDS AND DATA RELATING THERETO.
AS USED HEREIN, (I) "ERC CLAIMS" MEANS AND INCLUDES ANY AND ALL CLAIMS AND/OR REQUESTS FOR ERCS TO THE INTERNAL REVENUE SERVICE AND/OR ANY OTHER GOVERNMENTAL AND/OR QUASI-GOVERNMENTAL AUTHORITY; AND (II) "ERCS" MEANS EMPLOYEE RETENTION TAX CREDITS MADE AVAILABLE TO EMPLOYERS UNDER THE CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT (CARES ACT), AS MODIFIED.

5. Check only if applicable and check only one box: Collateral is  ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien    ☐ Non-UCC Filing

7.  ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
C1021068

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT SUBMITTER** (optional)<br>CSC   1-800-858-5294 | |
| **B. E-MAIL CONTACT AT SUBMITTER** (optional)<br>SPRFiling@cscglobal.com | |
| **C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br><br>⌐ 2762 44729<br>CSC<br>801 Adlai Stevenson Drive<br>Springfield, IL 62703        Filed In: Nevada<br>                                    (S.O.S.) ⌐ | |

| Filed in the Office of | Initial Filing Number<br>**2024388484-7** |
|---|---|
| *F Aguilar*<br>Secretary of State<br>State Of Nevada | Filed On<br>**February 20, 2024 10:00 AM**<br>Number of Pages<br>1 |

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME  Home For Now LLC | | | | |
|---|---|---|---|---|
| **1b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| **1c. MAILING ADDRESS** 5601 Echo Avenue Building A | CITY<br>Reno | STATE<br>NV | POSTAL CODE<br>89506 | COUNTRY<br>USA |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **2b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| **2c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  Corporation Service Company, As Representative | | | | |
|---|---|---|---|---|
| **3b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| **3c. MAILING ADDRESS** PO Box 2576,<br>UCCSPrep@CSCGLOBAL.COM | CITY<br>Springfield | STATE<br>IL | POSTAL CODE<br>62708 | COUNTRY<br>USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
"Future Receipts" sold by Debtor to Secured Party. "Future Receipts" means any payments received by Debtor from customers and other third-parties in exchange for Debtor's goods or services (in any form including, but not limited to, cash, check, payment card, and electronic transfers). Debtor & Secured Party intend that the sale of Future Receipts is a sale and not an assignment for security or a financing. Pursuant to the agreement between Secured Party and Debtor, Debtor is prohibited from transferring any Future Receipts to any other person or entity, granting any security interests in its accounts receivables, or obtaining any financing that impairs the value of the Future Receipts or Secured Party's right to collect the same until Secured Party has received all amounts due to it.

| | |
|---|---|
| **5. Check <u>only</u> if applicable and check <u>only</u> one box.**  Collateral is  ☐ held in a Trust (see UCC1Ad, item 17 and instructions) | ☐ being administered by a Decedent's Personal Representative |
| **6a. Check <u>only</u> if applicable and check <u>only</u> one box.** | **6b. Check <u>only</u> if applicable and check <u>only</u> one box:** |
| ☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien    ☐ Non-UCC Filing |
| **7. ALTERNATIVE DESIGNATION** (if applicable):  ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor | |
| **8. OPTIONAL FILER REFERENCE DATA:** | 2762 44729 |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141 |

| B. E-MAIL CONTACT AT FILER (optional) |
| uccfilingreturn@wolterskluwer.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

97694271

NVNV

File with: Secretary of State, NV

**Filed in the Office of**

F.H.Aguilan

Secretary of State
State Of Nevada

**Initial Filing Number**
**2024390985-8**
Filed On
**March 4, 2024 10:00 AM**
Number of Pages
1

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name: do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
| HOME FOR NOW, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5601 ECHO AVE STE A | RENO | NV | 89506 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name: do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
| Channel Partners Capital, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 10900 Wayzata Blvd, Suite 300 | Minnetonka | MN | 55305 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor now owned or hereafter acquired

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
97694271

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

Exhibit 2

Exhibit 2

## NOTIFICATION OF DISPOSITION OF COLLATERAL

To: The highest qualified bidder. Please see the mailing matrix which has been attached to this Notification as Exhibit "A".

From: US Small Business Administration 10737 Gateway West, #300, El Paso, TX 79935 and C/O W. Donald Gieseke, Chapter 7 Trustee for Home for Now, BK-N- 24-50236-hlb, 18124 Wedge Parkway, Suite 518, Reno, Nevada 89511

We will sell all of the personal property that is currently stored in locked conex boxes and the warehouse utilized by the Debtor and the 25 conex units to the highest qualified bidder at public sale. A sale could include a lease or license. The sale will be held as follows:

On _____, 2024 at _____ a.m or p.m. a sale shall be held before the bankruptcy court on the HLB Zoom Teleconference Line. The hearing is by Phone. Dial 10 minutes before the scheduled time. The dial in number is (833) 435-1820. You will be prompted for the Meeting ID, which is 160 532 0260.# You will be prompted for your participant ID or to just press pound (#). You may then be prompted for a code, which is 643758#

There may be other cases heard at this time. Please mute your telephone lines until the Court Clerk calls the case "Home for Now, Case No. BK-N- 24-50236-hlb".

When the case is called, the Chapter 7 Trustee's counsel will ask the Court to approve the sale of the personal property (home furnishings) stored in the conex units and the conex units to Stay, LLC for $102,000 pursuant to the terms set forth in the Trustee's Amended Motion to Sell Assets Free and Clear of Liens, Docket No. _____. A copy of this Amended Motion and the Notice of Motion will be mailed to the parties named in the mailing matrix attached hereto as Exhibit "A".

When the Bankruptcy Judge asks if there are any overbidders, and you wish to overbid, please make sure your line is un-muted and announce yourself to the Court. You will then be asked to make an overbid.

1

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell or, *as applicable*, lease or license.

You may request an accounting by calling us at W. Donald Gieseke, Chapter 7 Trustee for Home for Now, BK-N- 24-50236-hlb (775) 742-9107.

# EXHIBIT "A"

Label Matrix for local noticing
0978-3
Case 24-50236-hlb
District of Nevada
Reno
Wed Jul 31 14:21:50 PDT 2024

ROBIN MARIE CULLEN LIVING TRUST dated June 1
ESTES LAW PC
605 Forest Street
Reno, NV 89509-1702


ABC/ AMEGA
500 SENECA ST
STE 503
BUFFALO, NY 14204-1963


BIZFUNDER
630 7TH AVE
STE 505
BROOKLYN, NY 11215


Berkovitch and Bouskila, PLLC
1545 Route 202, Suite 101
Pomona, NY 10970-2951


CHANNEL PARTNERS
5110 WAYZATA BLVD
STE 305
HOPKINS, MN 55305


COLUMBIA DEBT RECOVERY
PO BOX 3630
EVERETT, WA 98213-8630


DEBRA KYSER - THE HOPE TRUST
C/O ART KYSER
8331 HOMESTEAD RD, SPC 12
LAKESIDE, AZ 85929-6700


FORD MOTOR CREDIT COMPANY, LLC
LIS PORTFOLIO SERVICES, LLC
4515 N SANTA FE AVE. DEPT. APS
OKLAHOMA CITY, OK 73118-7901


HARTFORD INSURANCE
690 ASYLUM AVE
HARTFORD, CT 06155-0002

Ford Motor Credit Company, LLC, c/o AIS Port
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901


United States Bankruptcy Court
300 Booth Street
Reno, NV 89509-1360


ADT
452 SABLE BLVD
UNIT G
AURORA, CO 80011-0813


BIZFUNDER
C/O ARIEL BOUSKILA, ESQ.
BERKOVITCH & BOUSKILA, PLLC
1545 US 202, STE 101
POMONA, NY 10970-2951


CAPITAL INSURANCE GROUP
PO BOX 231
MONTEREY, CA 93942-0231


CHARLIE HUANG
14403 OKA LANE
LOS GATOS, CA 95032-1913


DARRELL BARRON
PO BOX 17972
RENO, NV 89511-1034


DESERT AIR
PO BOX 1113
SPARKS, NV 89432-1113


FORWARD FINANCING
53 STATE STREET
FL 20
BOSTON, MA 02109-2820


HOMELEGANCE
48200 FREMONT BLVD
FREMONT, CA 94538-6509

5601 ECHO AVE.
SUITE A
RENO, NV 89506-3212


360 EQUIPMENT FINANCING
PO BOX 843840
DALLAS, TX 75284-3840


ALEXANDER APARTMENTS
11380 S. VIRGINIA STREET
RENO, NV 89511-9035


BYZFUNDER NY LLC D/B/A BYZFUNDER
1545 Route 202, Suite 101
Pomona, NY 10970-2951


CAROL BOND
7240 LAKESIDE DRIVE
RENO, NV 89511-7607


CITY OF RENO
BUSINESS LICENSING DEPT
PO BOX 1900
RENO, NV 89505-1900


DEAN RAPPA
1918 IMOLA CT
LAS VEGAS, NV 89123-3960


FORD MOTOR CREDIT
PO BOX 1732
ROOM 2945
DEARBORN, MI 48121-1732


GUEST SUPPLY
PO BOX 6771
SOMERSET, NJ 08875-6771


IMPERIAL MATTRESS
3440 LA GRANDE BLVD
SACRAMENTO, CA 95823-1009

INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA 19101-7346

IQ DATA INTERNATIONAL
21222 30TH DRIVE SE
SUITE 120
BOTHELL, WA 98021-7019

JESSE LAWSON
2860 ETHELINDA WAY
RENO, NV 89521-4395

JUDY AND TAMMY DIAL
900 S. MEADOWS PKWY
UNIT 1714
RENO, NV 89521-5973

LEE EDWARDS
3 FRIAR STREET
LINDISFARNE AUSTRALIA 7015

LIBERTY MUTUAL INSURANCE
PO BOX 188025
FAIRFIELD, OH 45018-8025

M&G CLEANING
7055 FREEDOM DRIVE
SPARKS, NV 89436-9009

MODERN STORAGE
14155 COCOA AVE
RENO, NV 89506

NATHAN MORTON
2033 SAN ELIJO
#632
CARDIFF BY THE SEA, CA 92007-1726

NEVADA DEPARTMENT OF MOTOR VEHICLES
LEGAL DIVISION
555 WRIGHT WAY
CARSON CITY, NV 89711-0001

NEVADA DEPARTMENT OF TAXATION
BANKRUPTCY SECTION
555 E. WASHINGTON
STE 1300
LAS VEGAS, NV 89101-1046

NEVADA LABOR COMMISSION
1818 E. COLLEGE DRIVE
#102
CARSON CITY, NV 89706-7986

NEVADA OVERHEAD DOOR
1335 GREG STREET
STE 107
SPARKS, NV 89431-6075

NV ENERGY
6100 NEIL ROAD
RENO, NV 89511-1100

OASIS CORP HOUSING
3225 S. MACDILL AVE
#129-252
TAMPA, FL 33629-8171

OCG CREATIVE LLC
5100 PLUMAS ST
STE 100
RENO, NV 89519-6064

OFFICE OF THE UNITED STATES TRUSTEE
300 BOOTH STREET ROOM 3009
RENO, NV 89509-1360

PONY EXPRESS STATION, LLC
1045 DODGE LANE
FALLON, NV 89406-9280

RELOCATION AMERICA
26261 EVERGREEN
SUITE 500
SOUTHFIELD, MI 48076-4400

ROBIN CULLEN LIVING TRUST
900 S. MEADOWS PKWY
UNIT 4114
RENO, NV 89521-2925

SCOT TER BEEK
900 S. MEADOWS PKWY
UNIT 1022
RENO, NV 89521-2908

SCOTT DOGGETT
900 S. MEADOWS PKWY
UNIT 5021
RENO, NV 89521-2936

SECURITY NATIONAL GROUP
PO BOX 531
MASON, OH 45040-0531

SHIPPED.COM
758 E. WHITEHALL RD
COOKEVILLE, TN 38501-7203

SPECTRUM
9145 S. FALKENBERG RD
RIVERVIEW, FL 33578-8652

STRESS FREE CORPORATE HOUSING
2700 S COMMERCE PKWY
STE 210
FORT LAUDERDALE, FL 33331-3630

SUE COATES
PO BOX 34600
RENO, NV 89533-4600

THE ALEXANDER AT SOUTH VIRGINIA
C/O LAW OFFICES OF AMY N. TIRRE
AMY N. TIRRE, ESQ.
3715 LAKESIDE DRIVE
RENO, NV 89509-5349

THUY TRAN
55 WATER LILY CT
RENO, NV 89511-4745

TMWA
PO BOX 30013
RENO, NV 89520-3013

(p)U S  SMALL BUSINESS ADMINISTRATION
12 N SPRING ST 5TH FLOOR
OS ANGELES CA 90012-4701

U.S. TRUSTEE - RN
300 BOOTH STREET, STE 3009
RENO, NV 89509-1362

UNITED
PO BOX 1608
SKOKIE, IL 60076-8608

UNITED STATES ATTORNEY
00 W. LIBERTY STREET
600
eno NV 89501-1930

US SMALL BUSINESS ADMINISTRATION
SBA DISASTER LOAN SERVICE CENTER
1545 HAWKINS BLVD
STE 202
EL PASO, TX 79925-2654

WASTE MANAGEMENT
PO BOX 3020
MONROE, WI 53566-8320

TEPHEN R HARRIS
ARRIS LAW PRACTICE LLC
50 E. PATRIOT BLVD.
UITE F
ENO, NV 89511-1477

W. DONALD GIESEKE
18124 WEDGE PKWY., STE 518
RENO, NV 89511-8134

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

.S. SMALL BUSINESS ADMINISTRATION
FFICE OF GENERAL COUNSEL
12 N. SPRING ST., 5TH FL
os Angeles CA 90012

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)THE ALEXANDER AT SOUTH VIRGINIA

(d)Modern Storage LLC
14155 Cocoa Ave
Reno, NV 89506-1415

(u)NEVADA INDUSTRIAL PROPERTIES, LLC
C/O NEVADA COMMERCIAL SERVICES
1475 TERMINAL WAY
STE A

(d)SCOT TER BEEK
00 S. MEADOWS PKWY
NIT 1022
ENO, NV 89521-2908

End of Label Matrix
Mailable recipients    67
Bypassed recipients     4
Total                  71

SCOT TER BEEK
900 S. MEADOWS
PKWY
UNIT 1022
RENO, NV 89521
Owner/Manager of
Home for Now, LLC

SCOT TER BEEK
950 HENRY ORR PKWY
UNIT 2306,
SPARKS, NV, 89436,
USA
Owner/Manager of
Home for Now, LLC

SCOT TER BEEK
PO BOX 18266
RENO, NV, 89511
Owner/Manager of
Home for Now, LLC

BYZFUNDER NY LLC
D/B/A BYZFUNDER
1545 Route 202, Suite
101
Pomona, NY 10970

US Small Business
Administration
10737 Gateway West,
#300,
El Paso, TX 79935

Corporation Service
Company,
as Representative,
P.O. Box 2576,
Springfield, IL 62708

BYZFUNDER
C/O ARIEL BOUSKILA,
ESQ. BERKOVITCH &
BOUSKILA, PLLC
1545 US 202, STE 101
Pomona, NY 10970

360 EQUIPMENT
FINANCING
PO BOX 843840
Dallas, TX 75284

CHANNEL PARTNERS
1110 WAYZATA BLVD
STE 305
Hopkins, MN 55305

FORD MOTOR CREDIT
PO BOX 1732
ROOM 2945
Dearborn, MI 48121

FORWARD FINANCING
53 STATE STREET
FL 20
Boston, MA 02109

Corporation Service
Company,
as Representative,
P.O. Box 2576
Springfield, IL 62708

Channel Partners
Capital,
10900 Wayzata Blvd.,
Suite 300,
Minnetonka, MN.
55305

SHIPPED.COM
758 E. WHITEHALL RD
Cookeville, TN 38501

US SMALL BUSINESS
ADMINISTRATION
SBA DISASTER LOAN
SERVICE CENTER
1545 HAWKINS BLVD
STE 202 El Paso, TX
79925

U.S. SMALL BUSINESS
ADMINISTRATION
OFFICE OF GENERAL
COUNSEL
312 N. SPRING ST.,
5TH FL
Los Angeles, CA 90012

U.S. SMALL BUSINESS
ADMINISTRATION
C/O UNITED STATES
ATTORNEY
100 W. LIBERTY
STREET
#600
Reno, NV 89501

Innovation Refunds,
4350 Westown Pkway
8 300,
West Des Moines, IA,
50266.

# Exhibit  3

# Exhibit  3



Zach Ernstein is your Sales Manager
+1 503-SHIPPED x120

**Shipped.com Corporation** (World Headquarters)
1 Maritime Square, Harbourfront Centre, Singapore 099253
+1 503-SHIPPED  sales@shipped.com  https://shipped.com
Local Depots   ■ Americas ■ Asia ■ South Africa ■ Europe ■

Home For Now
Scot Ter Beek
5601 Echo Ave
Reno, NV 89506 USA

+17758158494
scot@myhomefornow.com

\>PAID $11936.00 on 2019-01-14<
\>PAID $0.00 on 2019-02-01<
\>PAID $0.00 on 2019-03-01<
\>PAID $946.39 on 2019-04-05<
\>PAID $946.39 on 2019-05-08<
\>PAID $946.39 on 2019-06-04<
\>PAID $946.39 on 2019-07-05<

# INVOICE 8017584

Monday, January 14th, 2019



| Items | Amount |
|---|---|
| 20 x 40' Guaranteed CWO Shipping Container | $2575/ea |
| Professional Flatbed Delivery Included | $700/ea |
| | |
| Sales Manager Discount | -$7500 |
| Terminal Fees, Lift On fees, Depot Gate-Out, Port Charges, Etc. | All Included |

**Total:**   **$58,000 USD**

■ **ONLINE SHOPPING CART CHECKOUT:** https://shipped.com/cart/8017584/f4b8a8a
■ **CASH BANK DEPOSIT:** Deposit at any Chase Bank branch to the account of: Shipped.com, account number: 502010603. Please text or email a picture of the deposit slip to your sales manager.
■ **ACH (ELECTRONIC FUND TRANSFER):** Chase Bank routing number: 322271627, Account holder: Shipped.com, Account number: 502010603.  (Prefer us to debit you? Use our online checkout)
■ **WIRE TRANSFER (DOMESTIC USA):** Chase Bank, 10430 Highland Manor Dr, Tampa, FL 33610., ABA/Routing Number: 322271627., Account: Shipped.com, Account Number: 502010603.
■ **WIRE (GLOBAL):** DBS Bank, 12 Marina Blvd, MBFC Tower 3, Singapore 018982., SWIFT/BIC Code: DBSSSGSG, Account: Shipped.com Corporation, Account Number: 0048-0069-6112-8022
■ **CRYPTO:** Bitcoin, Ethereum and many more. Use our online checkout above please.
■ **PO / NET 30 TERMS:** Available for large corporations and Federal, State & Local Govt Agencies.
■ **CREDIT CARDS AND DEBIT CARDS:** Are accepted with a fee. Use our online checkout above.

## Shipped.com Corporation Invoice Terms & Conditions

Containers per attached ("Equipment") are  being sold and transferred by Shipped.com Corporation ("Seller") to the party listed above  as ("Purchaser") in accordance with the terms hereof. Seller hereby acknowledges that it owns the Equipment or is acting as agent on behalf of the owner. Upon full payment of this invoice, Seller warrants that Purchaser shall have good title to the Equipment with respect to any and all parties claiming by, through or under Seller. No title or other interest in or to the Equipment shall transfer unless and until full payment therefore is received by Seller. SAVE AS AFORESAID, SELLER MAKES NO WARRANTIES OF ANY KIND WITH RESPECT TO THE EQUIPMENT.

EQUIPMENT COLOR IS NEVER GUARANTEED UNLESS YOUR INVOICE SPECIFICALLY LISTS A RAL COLOR CODE.  EQUIPMENT SOLD HEREUNDER IS TECHNICALLY USED EQUIPMENT INCLUDING, BUT NOT LIMITED TO, 'NEW' ONE-TRIP CONTAINERS WHICH HAVE BEEN TRANSPORTED WITH 3RD PARTY GOODS LOADED INSIDE AND THEY ARE SOLD AS IS AND WITH ALL FAULTS. SELLER, NOT BEING THE MANUFACTURER NOR AGENT OF THE MANUFACTURER OF ANY OF THE EQUIPMENT SOLD HEREUNDER, MAKES NO WARRANTIES, EITHER EXPRESS OR IMPLIED AS TO THE FITNESS OF THIS EQUIPMENT FOR ANY PARTICULAR PURPOSE, OR AS TO THE QUALITY, DESIGN, CONDITION, CAPACITY, SUITABILITY, MERCHANTABILITY OR PERFORMANCE OF ANY OF THE EQUIPMENT OR OF THE MATERIAL OR WORKMANSHIP THEREOF.

All risks aforesaid, as between Seller and Purchaser or as between Seller and any third party following the sale of the Equipment to the Purchaser will be borne by Purchaser at its sole risk and expense and Purchaser accordingly waives and agrees not to assert any claim whatsoever against Seller based thereon. Purchaser additionally agrees, regardless of cause, not to assert any claim whatsoever against Seller for loss of anticipatory profits or consequential damages with respect to any of the Equipment sold hereunder. Furthermore, Purchaser agrees at its sole cost and expense to defend, indemnify and hold Seller harmless from and against any and all claims for personal injury, death and/or property damage raised by any employee, agent and/or representative of Purchaser and/or by any third party following the earlier to occur of delivery or possession or transfer of title to the Equipment to Purchaser, whether such claims arise from or are related to the Equipment and/or the transfer of title thereto to Purchaser, as well as from and against any and all costs, expenses and damages incurred by Seller with respect thereto. TO THE EXTENT PERMITTED BY APPLICABLE LAW, PURCHASER HEREBY WAIVES THE BENEFIT OF ALL PROTECTIONS AND REMEDIES AGAINST SELLER PROVIDED TO PURCHASER AT LAW OR IN EQUITY WITH RESPECT TO ANY DEFECTS OR DAMAGES ARISING OUT OF OR RELATING TO THE DESIGN, MANUFACTURE, QUALITY OR CONDITION OF ANY OF THE EQUIPMENT SOLD HEREUNDER.

No oral agreement, guaranty, promise, condition, representation or warranty made to Purchaser by Seller its employees and/or agents with respect to the Equipment shall be binding upon Seller; all prior conversations, agreements or representations related thereto and/or to the Equipment are integrated herein, and no modification hereof shall be binding upon Seller unless in writing and signed by an authorized representative of Seller.

Purchaser agrees to assume exclusive liability for and to pay, indemnify and hold Seller harmless from all sales or use taxes, transfer, title and registration fees, Value Added Taxes (VAT), Goods and Services Taxes (GST), Consumption Taxes, domestication, personal property taxes or other taxes, tolls, levies, imposts, customs duties or governmental charges imposed by any jurisdiction, country or any subdivision or authority in connection with the sale, transfer, use, delivery, importation, domestication, and/or re-exportation of the Equipment and all interest, penalties or similar liabilities related thereto (collectively, "Taxes"). All prices, fees and other charges payable hereunder, shall not include any Taxes and any Taxes shall be paid by Purchaser in addition thereto. Where applicable in any jurisdiction, Seller and Purchaser agree that any GST or VAT due on the sale and transfer of the Equipment is to be self-assessed and remitted by the Purchaser under the reverse charge mechanism. In such case Purchaser shall communicate to Seller its GST or VAT identification number. Equipment may be subject to customs control under temporary admission arrangements.

Purchaser shall assume and comply with all applicable legal, tax and customs requirements in connection with the sale, transfer, use, importation, domestication and/or re-exportation of the Equipment, including filing any customs documentation and informing any taxing authority on the movements of the Equipment. Purchaser shall provide Seller upon request with documentation evidencing compliance with those legal, tax and customs requirements and payment of any Taxes. Purchaser shall promptly pay or reimburse Seller for all costs and damages related to any liability incurred by Seller a result of Purchaser's non-compliance or delay with its responsibilities herein.

Seller offers online tracking for all purchases at it's website https://shipped.com/tracking. The tracking information provided is provided directly by Seller and also in part by third party sources. All information is deemed reliable but not guaranteed to be accurate. Purchaser acknowledges that the Equipment may be inbound via ship, train or truck with limited or no tracking or updates available. Transportation delays and logistical challenges render any delivery dates given to Purchaser or provided through our website tracking page as non-guaranteed estimates only. While every effort will be made to expedite delivery of Equipment to the Purchaser, Equipment is solely guaranteed to reach the depot/port/destination within 180 days of payment in full. All sales are final, non-refundable and non-returnable.

Unless otherwise indicated herein, all payments due to Seller shall be payable in United States Dollars and shall be paid to Seller immediately upon receipt of this invoice, at the address for Seller shown herein. In the event this invoice is not paid when due, Seller may, without prejudice to any other remedy it may have, charge, as additional rental, a service charge at the rate of the lesser of eighteen (18) percent per annum or the maximum amount permitted by applicable law, until the balance is paid in full. Further, should full payment not be made, Purchaser shall be fully liable for reasonable damages as provided by law, and for all costs and expenses incurred by Seller on account of such nonpayment including all costs of recovering equipment, legal costs and reasonable attorney's fees. After payment is received in full, Purchaser shall remove all markings and lettering pertaining to Seller and its ownership of the Equipment. Seller reserves a purchase money security interest in the Equipment sold herein, as well as the right to file any documentation to perfect such interest in any jurisdiction. Buyer agrees to comply with any reasonable request of Seller to perfect such interest. This contract, and all the rights and obligations of the parties hereto, shall be governed, construed in accordance with, the laws of Singapore.

# Exhibit 4

# Exhibit 4

U.S. Small Business Administration
# SECURITY AGREEMENT

| | |
|---|---|
| SBA Loan #: | ▮▮▮▮▮▮ |
| Borrower: | Home For Now, LLC |
| Secured Party: | **The Small Business Administration, an Agency of the U.S. Government** |
| Date: | 06.12.2020 |
| Note Amount: | $135,700.00 |

1.  **DEFINITIONS.**

Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC"). "SBA" means the Small Business Administration, an Agency of the U.S. Government.

2.  **GRANT OF SECURITY INTEREST.**

For value received, the Borrower grants to the Secured Party a security interest in the property described below in paragraph 4 (the "Collateral").

3.  **OBLIGATIONS SECURED.**

This Agreement secures the payment and performance of: (a) all obligations under a Note dated 06.12.2020, made by Home For Now, LLC , made payable to Secured Lender, in the amount of $135,700.00 ("Note"), including all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Borrower in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations.

4.  **COLLATERAL DESCRIPTION.**

The Collateral in which this security interest is granted includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible

Page 2 of 5

and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

5.    **RESTRICTIONS ON COLLATERAL TRANSFER.**

Borrower will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Borrower's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Borrower may sell inventory in the ordinary course of business on customary terms. Borrower may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

6.    **MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.**

Borrower must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location. Borrower hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice. Borrower must: (a) maintain the Collateral in good condition; (b) pay promptly all taxes, judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party. Borrower hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Borrower's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

7.    **CHANGES TO BORROWER'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.**

Borrower must notify Secured Party by written or electronic communication not less than 30 days before taking any of the following actions: (a) changing or reorganizing the type of organization or form under which it does business; (b) moving, changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name. Borrower will pay for the preparation and filing of all documents Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest in the event of any such change.

8.    **PERFECTION OF SECURITY INTEREST.**

Borrower consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Borrower must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral. Borrower will pay the filing and recording costs of any documents relating to Secured Party's security interest. Borrower ratifies all previous filings and recordings, including financing statements and

notations on certificates of title. Borrower will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

9.    **DEFAULT.**

Borrower is in default under this Agreement if: (a) Borrower fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Borrower makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs. In the event of default and if Secured Party requests, Borrower must assemble and make available all Collateral at a place and time designated by Secured Party. Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Borrower or the Collateral is located. Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Borrower waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

10.    **FEDERAL RIGHTS.**

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law, including SBA regulations. Secured Party or SBA may use state or local procedures for filing papers, recording documents, giving notice, enforcing security interests or liens, and for any other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Agreement, Borrower may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

11.    **GOVERNING LAW.**

Unless SBA is the holder of the Note, in which case federal law will govern, Borrower and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Borrower is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

12.    **SECURED PARTY RIGHTS.**

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

13.    **SEVERABILITY.**

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

SBA Loan #████                                                                                    Application #████

14.    **BORROWER CERTIFICATIONS.**

Borrower certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Borrower's name and not in the name of any other organization or individual; (c) Borrower has the legal authority to grant the security interest in the Collateral; (d) Borrower's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; (g) Borrower has read and understands the meaning and effect of all terms of this Agreement.

15.    **BORROWER NAME(S) AND SIGNATURE(S).**

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Borrower under this Agreement.

Home For Now, LLC

┌─ DocuSigned by:

*Scot Ter Beek*

└─ 3FDC1CCB599C43B...

Date:        06.12.2020

Scot Ter Beek, Owner/Officer

SBA Form 1059 (09-19) Previous Editions are obsolete.